J.P. Morgan Chase & Co. Plaintiff's theory of this case is that Chase Bank's First Amendment-protected policy advocacy makes it legally responsible for the Iranian hostage crisis. That theory is as implausible as it sounds, which is probably why plaintiffs didn't raise it for almost 40 years. The district court rightly dismissed this case as untimely. I'd like to focus on three points today, Your Honor. First, Judge Carney, you're exactly right. Plaintiffs did waive both of their timeliness arguments on the federal claim below, as Mr. Kelly just conceded. They abandoned their discovery rule argument, and they never asserted federal equitable tolling until getting here on appeal. That's my first point. My second point is that plaintiffs' discovery rule theory is wrong, and we disagree with them about whether and how the discovery rule applies. But even if their theory were right, they would lose under their own theory. Plaintiffs' central claim, and you heard it again here from Mr. Kelly, is that their federal claim accrued once they were able to learn that Chase allegedly sabotaged the October surprise. But that allegation has been public. It's been in the public domain for many years. It was referenced in the 1992 House Task Force report, and it was confirmed in the 2004 and 2007 books that were written by Robert Perry and Peter Dale Scott. And in particular, the pages of those books that I would suggest the court might want to look at are page 170 and 190 of the joint appendix. Both of those specific pages specifically quote Mr. Reid, who was Mr. Rockefeller's assistant, saying to Mr. Casey, who had been President Reagan's campaign manager, and this is a vulgarity, but I'll repeat it because it's a quotation, we fucked the October surprise. And so there you have the exact same allegation that Mr. Kelly is saying he could have only known about for the first time in the 2019 New York Times article. So if plaintiffs had been diligent, if they and their lawyers, and they say at page 14 of their brief that they had engaged lawyers beginning in 1984, if they had been diligent and they had been monitoring what was being said and the research that had been done by investigative journalists like Robert Perry in his book, they would have known this. Does that tell us the involvement of Chase itself as a corporate entity as opposed to David Rockefeller and his team of people acting separately and independently? I think absolutely, Your Honor, given Mr. Reid's role and given the allegations that were in those books, let me just run through them very quickly. First of all, you have the quote, which appears in both books at page 170 and 190, we fucked Carter's October surprise. In addition to that, they talk about the meeting, a meeting that happened in September 1980. Both books do. And again, these are books that were published a long time ago that involved Rockefeller, Reid, and several other individuals affiliated with Chase Bank, you know, top officials and assistants and advisors to Rockefeller. They involve also Reid's false denial or allegedly false denial of contact with Casey in 1980, his efforts to dodge the congressional investigators and the FBI investigators, his false claim allegedly that he didn't know what the October surprise referred to. All of those were indisputably in the public domain, we think as early as the early 90s, but certainly in great detail by 2004 and 2007 when those two books came out. And those were mainstream publications. I mean, one of those books was written by Robert Perry, who had been a former journalist for Newsweek and the AP. He had won prizes. He'd even been a finalist for the 1985 Pulitzer Prize for his reporting on the Iran-Contra scandal. So I think any diligence would have discovered these allegations. Let me just back up a step, though, because we think that because of these things that were in fact in the public record, we think that we win under plaintiffs' own theory of the discovery rule. But I just want to back up and make a broader point, which is that we don't agree with their theory of the discovery rule at all. What they are basically arguing, based on a misunderstanding of the Rotella decision, is that there's a baseline rule of federal law that there's always a discovery rule that applies. That's kind of the baseline rule. But the more recent Supreme Court cases, and even the Rotella decision itself, but especially the most recent Supreme Court decisions, including the Ratkiski case, make clear that a discovery rule is, quote, And it just rejects the idea that limitations periods in federal litigation generally begin to run when a plaintiff discovers their injury. Rather, the baseline rule is the injury accrual rule. And here, of course, the plaintiffs all knew of the injury when they were being subject to the detention and the prolonged nature of it because it lasted as long as it did. How would you describe the rest of the rule? I mean, it still is difficult to understand how just an injury is enough if you have no one to sue, if you have no idea how to bring an action. My understanding is that it triggers an obligation of diligence to explore the cause and the potential wrongdoer, and that serves the interest of finality and preserving evidence related to a wrong. But if you have no clue at all who caused a wrong, how can it really be a reasonable policy to start the statute of limitations running as soon as you know you're hurt? Well, Your Honor, a couple of points on that. First of all, I think this is a debate that the Supreme Court has been having internally over the last 20 or 30 years. And if you look at the Rotella decision and footnote two of the Rotella decision and the Scalia dissent in that case, it shows that it's kind of an open question as of that point of whether the baseline rule is a discovery rule or an injury accruance rule. But once you get to cases like Wallace and Gabelli and Rotisky, the Supreme Court makes clear that the baseline, the default rule, is accrual upon injury, not accrual upon discovery. Now, there are a couple exceptions to that. We, of course, concede that medical malpractice cases, for example, and fraud cases are the two kind of paradigmatic exceptions where the court has basically recognized that although the baseline rule is accrual upon injury, in certain types of specific types of cases, we're going to have a kind of discovery diligence rule that's going to apply. And generally what those cases say and what this court's cases say in that context is that you need to discover not just the injury, but also that it was an external cause. You know, for example, in the medical malpractice context, you might be sick and you know you're sick, but you don't know that it was caused by the doctor as opposed to you just having a natural illness. And so I think the way to read those cases and cases like the Levy case and the Castillo case from this court are that basically when you're in the realm of the exception, even then what the exception requires is knowledge of your injury, which we undoubtedly had, and then also knowledge that it was caused externally. It wasn't just naturally occurring. And here, of course, the plaintiffs all knew both that they had been injured and that their cause was external to them. Of course, their detention was most immediately caused by the revolutionaries. They really knew all about the cause. I mean, I don't know if we could just stylize it a little bit. Like, let's say that they thought they were held by Iranians, but then it turned out that American agents were somehow involved in directly in prolonging their captivity. I mean, would that be a reason to extend the discovery rule and say that they could sue once they discovered there were other parties involved in their captivity that they would have no reason to know about or that were concealing? No, Your Honor. And I think the best case sort of illustrating that point is the Levy case. The Levy case, and that's a relatively recent case of this court, the claim was essentially that the plaintiffs had suffered harm because there had been manipulation in the platinum futures market. And the plaintiffs had originally brought one suit based on one set of defendants, based on one theory of what they thought the manipulation was. And then a few years later, they bought a different suit against the defendants at issue in the Levy case that went up on appeal to this court. And they basically made that argument. They said, well, we originally thought it was one causal mechanism, one group of defendants. Now we think it's a different causal mechanism, different group of defendants. We didn't know about the first cause. And so, you know, delayed accrual as to these new defendants. And the court said, no, the court said, no, you knew about the injury. You knew enough to investigate. And I think similarly in the Castillo case, I think the court makes absolutely clear. And this is the Castillo case from this court. This is on page 140 of the decision that when it's explaining even the rule that the plaintiffs invoke here, the kind of, you know, who or what, you know, they basically say accrual happens when you discover the causes. And it explains what that rule means. And it says a claim will accrue when the plaintiff knows or should know enough to protect himself by seeking legal advice. We think that's consistent with the idea that you have to know that it was an external cause. Here, of course, plaintiffs on page 14 of their own brief sought legal advice as early as 1984 as they themselves acknowledge. And so they clearly knew that there was a need to do an investigation and they might potentially have claims against someone. They had lawyers that were on, you know, that they had engaged. And then, as I said earlier, you know, all this information came out, including about Chase's alleged involvement in prolonging the detention came out, we think, in the early 90s, but certainly by 2004 and 2007 when these books were published. So, Mr. Martinez, I'd be interested in you explaining like how the allegation of deliberate misrepresentation by the defendant falls into all of this. Plaintiffs are saying that the congressional investigation was manipulated, that there were conversations directed to the media in which defendants made misrepresentation. Like, how much can one expect plaintiffs to conduct their own diligence in the face of an allegedly orchestrated and quite sophisticated misrepresentation campaign? Well, Your Honor, a couple of points on that. First of all, we think that any alleged deception or anything like that, the only period of time in which that would be relevant would be before 1984, because that's the period of time in which the three-year statute of limitations would expire. So I'm happy to talk about all of their allegations, but just at the outset, I think we can eliminate anything that happened after 1984. Again, we don't think that the post-1984 things were misleading, but just we can leave those aside because those come too late. The claim was already untimely by that point. With respect to the other allegations they make, I mean, I'm happy to talk through them. First of all, they talk about the statement that was quoted in the 1981 New York Times article, where in plaintiffs' telling, you have Rockefeller essentially denying that Chase has any financial involvement with the Shah. But I would recommend strongly, Your Honors, that you look at the exact quotation where it appears in the article. That's at page 144 of the joint appendix. And the full passage shows that Rockefeller's comments about accounts of minor significance was referring only to the Shah's personal accounts, their family accounts, the foundation accounts. In the very next sentence or the very next paragraph, the article itself says, on the other hand, and here I'm quoting, on the other hand, Rockefeller does not deny that the financial relationship between Chase Manhattan and the Shah's government was clearly significant. And it goes on to talk about hundreds of millions of dollars in loans and more than $2 billion in Iranian transactions that Chase had an interest in. So that allegation about concealment before 1984 doesn't hold water. The next allegation that they make is that there was a statement that was made to a hostage who's not a plaintiff here, Mr. Kennedy, that Rockefeller said he barely knew the Shah. Well, that statement is clearly not an attempt to prevent the plaintiffs from filing this lawsuit. It has no connection to the lawsuit. Whether it's an exaggeration or not, I don't know. But I think that it certainly is not enough to trigger any sort of equitable tolling or equitable estoppel principle, both because the statement itself doesn't say much and because it wasn't even directed to the plaintiffs in this case. And then the final thing that they point to is the failure to register under FARA. But that doesn't affect any of this either. Chronologically, at the time that plaintiffs failed to allegedly failed to register under FARA, that was when they were lobbying to have the Shah brought into the country. And at that point in time, the plaintiffs had not suffered any injury. So there's no reason to conclude that the mere non-registration was somehow directed at preventing them from bringing their claims here, which is what New York law under Zimpano and Simchusky requires. So all of their allegations about this concealment and certainly all the ones that happened before 1984 are beside the point. The things that happened after 1992, again, I don't think that's enough to trigger any sort of estoppel, partly because the statute of limitations had already expired. Also, because that alleged concealment came to light in 2004 and 2007, all of the facts that they talk about about the efforts to mislead Congress were reported in the two books that I mentioned. And I think I'm a little bit over time, Your Honor, but with that, I'll just say that we believe this meritless case was filed far too late and we ask you to affirm. Thank you very much, Mr. Martinez. Mr. Kelly, you have two minutes of rebuttal. I think you're on mute, sir. Okay, can you hear me now? Yeah. I apologize. I have three points that I'd like to make. First of all, despite what Mr. Martinez says, we've not conceded anything, as this court recognized in Pearl v. City of Long Beach. Questions of accrual, estoppel, and then barring a defendant because of its own actions from asserting the statute of limitations are intertwined. And in that case, the appellant only identified the issue as estoppel, but the court took that as the launching point for everything. Second, with respect to these books to which Mr. Martinez reported, what we have here is something on the pleadings. The district court did not do any kind of fact development. It did some fact-finding, but it didn't do and it went beyond what is in the pleading, which must be accepted as true. And that's what Mr. Martinez asked this court to do as well. What should happen here is have a factual development of the record, which is how these things should proceed. With respect to that, Chase's statute of limitations defense is an affirmative defense on which they bear the burden of proving all elements, including accrual and everything else. And so it gets a little topsy-turvy when you start getting into equitable estoppel, but the basic statute of limitations defense is their burden. You bear the burden of showing due diligence to the extent that's an element in equitable estoppel, correct? I do. That's correct. And so you have a burden on accrual, and then you have a burden on estoppel. Just from the face of the complaint, it's pretty clear that there is a statute of limitations problem, right? And then you would have the burden to show that there should be an exception. Yes, 40 years is a very long time. Finally, with respect to the Levy case, which Mr. Martinez raised, this case is not at all like Levy. In that situation, the plaintiff suffered losses in the commodity market in 2008. Her complaint said that she thought the losses were the result of market manipulation, but she didn't know who, she says, to sue until 2014. That's not at all like this situation where, unlike Levy, this case is not about identifying additional defendants for the same wrong. More like the Barrett case, Barrett v. United States, is about an entirely new wrong that could not have been discovered any earlier. I realize that defendants say it could have been, but this is a factual inquiry that has to be developed, and we haven't had a chance to do that at all. All right. Thank you very much, sir. Thank you very much. Thank you both. We will reserve decision. Thank you. Thank you.